## SETTLEMENT AGREEMENT AND GENERAL RELEASE

Edward Childs (hereinafter, "Employee") and All-N-1 Security Services, Inc. ("Company") (Employee and Company may be collectively referred to herein as the "Parties" or individually as a "Party") hereby agree upon a settlement of all issues involved herein, and as described in this Settlement Agreement and General Release ("Agreement"), this 21st day of June, 2021 ("Effective Date"), as follows:

### RECITALS

**WHEREAS**, Employee filed that certain civil action in the United States District Court for the Northern District of Georgia civil action number 1:21-cv-00589-MLB ("Complaint"), in which the Employee alleged that the Company violated the Fair Labor Standards Act ("FLSA") by misclassifying Employee as an independent contractor and thereby failing to pay Employee's overtime for hours the Employee worked for the Company (the "Wage Claim"). Employee also alleged that the Employee was entitled to liquidated damages equal to the amount of unpaid wages (the "Liquidated Damages Claim"). Employee further brought a state law claim for breach of contract related to the rate of pay that the Employee was paid ("Contract Claim");

**WHEREAS**, the Company denies the allegations asserted by Employee as set forth in the Complaint. The Company believes that Employee was properly compensated under the FLSA and, therefore, that Employee is not entitled to wages or overtime pay. The Company believes that it acted in good faith and, therefore, that Employee is not entitled to liquidated damages. The Company further believes that it did not breach the contract between Employee and Company;

**WHEREAS**, by this Agreement, the Parties desire to settle, fully and finally, the claims that could arise under the FLSA; and

**WHEREAS**, the Parties have also separately negotiated and reached an agreement on a general release of claims, including the contract claims.

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual terms, covenants, and conditions hereinafter set forth, the Parties agree as follows:

1. **Settlement Amount for FLSA Claim**. As consideration for Employee's release of Employee's Wage Claim and Liquidated Damages Claim, the Company will pay Employee and Employee's attorneys the gross sum of $20,800 (the "FLSA Settlement Amount"). The FLSA Settlement Amount is being paid in settlement for Employee's Wage Claim and Liquidated Damages Claim, and Employee's attorney's fees and costs.

The Parties agree that the FLSA Settlement Amount will be paid as follows:

a. The Company will pay Employee the gross amount of $7,650.00 as full compensation for Employee's Wage claim.

b. The Company will pay Employee the gross amount of $7,650.00 as full compensation for Employee's Liquidated Damages Claim.

Joint Motion Exhibit "A"

      c.      The Company will pay the Martin | DeMelfi, LLC the gross amount of $5,500.00 for attorney's fees and costs. No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Martin | DeMelfi, LLC.

Sections 1(a) and 1(b) of the FLSA of the Settlement Amount shall be due and payable to Employee. Section 1(c) of FLSA Settlement Amount shall be due and payable to the Martin | DeMelfi, LLC attorney trust account. Employee and Employee's counsel agree not to seek any additional attorneys' fees, costs or expenses from the Company in connection with the matters alleged in the Complaint.

      **2.**      **Release of Claims under the FLSA by Employee.** In consideration of the FLSA Settlement Amount described in Section 1 of this Agreement, Employee releases and discharges the Company from any liability for claims and damages allegedly arising under the FLSA, including the Wage Claim, the Liquidated Damages Claim, and the Retaliation Claim.

      **3.**      **Settlement Amount for General Release.** As consideration for Employee's general release of claims, including the Contract Claim, against the Company in Section 6 of this Agreement, the Company will pay Employee the gross sum of $5,000.00 (the "General Release Settlement Amount"). No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Employee.

The consideration set forth above is in full and complete settlement of Employee's general release of claims against the Company. The General Release Settlement Amount shall be due and payable to Employee in accordance with Section 4 of this Agreement.

      **4.**      **Payment Schedule.** The FLSA Settlement Amount and the General Release Settlement Amount will be paid within five (5) business days from the Court's approval of the joint motion for approval of settlement agreement.

      **5.**      **Tax Liability.** In paying the amount specified in Section 1 or Section 3, Company makes no representation regarding the tax consequences or liability arising from said payments. Employee understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is Employee's sole responsibility, and that he will pay any such taxes that may be due or become due. Employee agrees to bear all tax consequences, if any, attendant upon the payment to Employee of the FLSA Settlement Amount and the General Release Settlement Amount. Employee further agrees to hold Company harmless from and against all valid tax or tax withholding claims, amounts, interest, penalties, fines or assessments finally determined to be valid by any taxing authority or governmental agency with regard to the FLSA Settlement Amount and the General Release Settlement Amount. In the event Company receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against Company, Company shall promptly, after receipt of such written notice, notify Employee by letter sent to counsel for Employee.

      **6.**      **General Release by Employee.** In consideration of the General Release Settlement Amount described in Section 3 of this Agreement, Employee (for the Employee,

Employee's agents, assigns, heirs, executors, and administrators) releases and discharges the Company (including its officers, owners, principals, members, employees, agents, representatives, attorneys, or officers) from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or equity which arose at any time from the beginning of time to the date Employee executes this Agreement, including the Contract Claim. Without limiting the foregoing general release, Employee understands that this general release applies, but is not limited, to: all claims arising out of Employee's employment relationship with the Company, the cessation of that employment, the compensation or benefits payable in connection with that employment or the cessation of that employment and/or any other interaction with Company, including, without limitation, (a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*; (b) The Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101*et seq.*; (c) The Equal Pay Act, as amended, 29 U.S.C. § 206, *et seq.*; (d) The Lilly Ledbetter Fair Pay Act of 2009; (e) The Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.*; (f) The National Labor Relations Act, 29 U.S.C. § 151, *et seq.*; (g) The Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 *et seq.*; (h) The Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq.*; (i) The Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*; (j) The Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq.* (the "FLSA"); (k) The Occupational Safety and Health Act, as amended, 29 U.S.C. § 651, *et seq.* (l) any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); (m) past or future wages, severance, compensation, vacation pay, holiday pay, meal or rest breaks, overtime, benefits, bonuses, commissions, fringe benefits, reimbursement of expenses, or other forms of consideration, payment, or remuneration, except for claims to enforce payment of those sums explicitly identified in Section 3; (n) breach of contract; (o) intentional and/or negligent infliction of emotional distress; and (p) any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing.

Employee further waives any and all rights to participate in a class or collective action alleging violations of any of the above laws, including those brought under the FLSA, and Employee further covenants and agrees not to accept, recover or receive any back pay, front pay, liquidated damages, other damages or any form of relief based upon any claims that have been asserted or could have been asserted or settled in a lawsuit that may arise out of, or in connection with, any other individual, class or administrative remedies pursued by any state or local governmental agency against Company.

This Agreement shall not apply to any provision of this Agreement that may be interpreted to waive, release, or extinguish any rights that, by express and unequivocal terms of law, may not under any circumstances be waived, released, or extinguished, including any other claim which cannot be released by private agreement.

Notwithstanding the foregoing, the Parties agree that the Employee's claim for workers' compensation benefits, before the Georgia State Board of Worker's Compensation, case number SBWC: 2020-111480  ("Workers Comp Claim"), is specifically excluded from this Agreement and any release of claims set forth herein.  To avoid any doubt, nothing contained herein shall in

any way release the Company or its Insurer and Employee is in no way releasing the Workers Compensation Claim by executing this Agreement.

**7.** **General Release by Company.** In consideration of the releases, promises and covenants provided for herein, the Company (for itself, its agents, assigns, successors, heirs, executors, and administrators) releases and discharges Employee from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or equity which arose at any time from the beginning of time to the date Employee executes this Agreement, including but not limited those growing out of, resulting from, or connected in any way to Employee's relationship and/or employment, and the termination thereof, with Company. Without limiting the foregoing general release, this includes, but is not limited to, all claims based on constitutional, statutory, common law, or regulatory grounds, including but not limited to conversion, negligence, breach of contract or implied covenant, defamation, libel, fraud, misrepresentation, or promissory estoppel. This includes all claims for any relief, no matter how denominated, including, but not limited to compensatory damages, punitive damages, and attorneys' fees and costs.

**8.** **Omitted.**

**9**. **Omitted**.

**10.** **Agreement Not to Seek Employment or Contractual Relationship.** Employee understands and agrees that, other than this Agreement, Company has no obligation to contract with, employ, or otherwise engage Employee for any sort of work or similar undertaking for compensation. Employee specifically waives any right or opportunity to seek such employment or contractual relationship with Company. Employee also understands and agrees that Company has no obligation to employ, contract with, or hire or rehire him, to consider him for hire, or to deal with him in any respect at any location, office, or place of business with regard to future contractual opportunities, employment, or potential employment.

**11.** **Representations, Warranties and Affirmations.** Other than Employee's Worker's Compensation Claim, Employee represents, warrants and affirms that the Employee has no suits, claims, charges, complaints or demands of any kind whatsoever currently pending against Company with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board. Other than Employee's Worker's Compensation Claim, Employee represents, affirms and warrants that the Employee has not filed any charge, complaint or action against Company with OSHA, the EEOC, the NLRB or any other Federal, State or local agency or board. This representation, affirmation, and warranty is a material inducement for Company to enter into this Agreement. In addition to all other rights and remedies Company may have at law or in equity, if Employee's representation, affirmation, and warranty is false, excluding the Workers Comp. Claim, Employee will return to Company all consideration paid pursuant to Section 1 and Section 3 of this Agreement. Employee further represents and affirms as a material term of this Agreement that he has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which he may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are

due to him, except as provided for in this Agreement, except those related to the Workers Compensation Claim.

**12.     Disclaimer of Liability.**  Nothing in this Agreement shall constitute or be construed as an admission of liability or wrongdoing by the either Party.  Each Party expressly denies that it has done anything wrong or unlawful.

**13.     Remedies for Breach.**  Should any Party prevail in any action brought against the other to enforce the terms of this Agreement, or to recover damages for breach of this Agreement, or to collect the FLSA Settlement Amount or the General Release Settlement Amount to be paid by Company under this Agreement, the prevailing Party shall be entitled to recover from the other Employee's or its reasonable attorneys' fees incurred in the action, along with costs and damages. In addition to all other rights and remedies Company may have at law or in equity, if Employee files a civil action or regulatory claim against Company alleging any of the claims released herein, Employee will return to Company all consideration paid pursuant to Section 1 and Section 3 of this Agreement.

**14.     Court Approval.**  Within five (5) days of the Effective Date of this Agreement, the Parties agree to jointly submit the this Agreement to the United States District Court for the Northern District of Georgia ("Court") for approval.  Each Party shall bear its own or his own attorney's fees in seeking Court approval pursuant to this Section.  In the event, the Court declines to approve this Agreement, the Parties will amend this Agreement to resolve any concerns identified by the Court in declining to approve.  The Parties shall submit a revised settlement agreement within ten (10) calendar days to the Court for approval and shall make every effort to give full effect to the terms upon which the Parties settled the disputes.

**15.     Mutual Cooperation**. The Parties agree to cooperate with each other to accomplish the terms of the Agreement, including, but not limited to, to execute such documents and to take such other action as may reasonably be necessary to implement the terms of the Agreement. The Parties to the Agreement shall use reasonable efforts, including all efforts contemplated by the Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the Agreement and the terms set forth herein. The Parties agree to work cooperatively and in good faith to address and resolve any concerns or disputes that may arise between the Parties in taking steps to secure the Court's approval of this Agreement.

**16.     Integration**.  This written Agreement contains the entire agreement of the Parties regarding the settlement of Employee's claims under the FLSA and the Parties' general release of claims.  This Agreement may not be changed orally but only by an agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.  The Parties acknowledge that each Party has not relied upon any representations or promises except as set forth herein and has not relied upon the other Party or its counsel for any advice on or interpretation of the legal or tax implications of this Agreement.  By signing below, the Parties acknowledge receipt of a copy of this Agreement.  Each Party has been advised to seek the advice of a Certified Public Accountant or other tax advisor to insure and review the Agreement and to advise each Party concerning how all of the terms and conditions set forth therein may affect their future tax liabilities.  The Parties hereto hereby acknowledge and agree that each has had the opportunity to retain its, his or her own Certified Public Accountants, tax advisor or tax attorney

with reference to the tax implications of this Agreement.  Further, the Parties hereby acknowledge that they have not relied upon the tax implications of this Agreement.  Further, the Parties acknowledge and agree that their signatures to this Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice.  All Parties acknowledge that its, his or her attorney provided them no tax advice and they have not relied on any representations of their lawyer in providing tax advice.

**17.** **Severability.**  Should any clause of this Agreement be found void by a court of law, with the exception of the requirement that the Company pay Employee and Employee's counsel the FLSA Settlement Amount set forth in Section 1 and the General Release Settlement Amount set forth in Section 3, that fact shall not impair the remainder of this Agreement.

**18.** **Governing Law.**  This Agreement shall be interpreted and enforced in accordance with the laws of the State of Georgia.  The parties agree to and hereby do submit to jurisdiction before any state or federal court of record in Fulton County, Georgia, subject to the right, if any, of either party to attempt to remove any claim arising under this Agreement to a United States District Court if said Court has jurisdiction.

**19.** **Construction of Agreement.**  The Parties hereby confirm and agree that this Agreement is the result of negotiation and compromise and that in interpreting this Agreement neither party shall be considered to be the drafter of the document, and that the language should not be strictly construed against either party.  Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

**20.** **Binding Effect.**  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, related companies, successors, and assigns.

**21.** **Expenses.**  The Parties shall pay their own expenses, including, without limitation, any attorney fees, mediation fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the FLSA Settlement Amount and the General Release Settlement Amount by the Company to Employee and employee's counsel referenced in Section 1.

**22.** **Counterparts.**  This Agreement may be executed in identical counterparts, each of which shall constitute an original of this Agreement. For purposes of executing this Agreement, the Parties may execute and exchange signatures page by facsimile, electronic mail (via pdf), or by other such electronic signatures, such as DocuSign or similar electronic signing software, all of which shall be deemed to be originals and effective as manual delivery.

**23.** **Notice**.  Any notice given pursuant to this Agreement will be in writing and will be deemed to have been given: (a) when delivered personally, by courier or by express service; (b) five (5) days following its deposit into the United States mail (certified mail, return receipt requested, or first class postage prepaid), addressed to the other Party at the address set forth below;

or (c) on the date of its transmission if sent via email or fax to the email address or fax number of the other Party's Primary contact person.  Either Party may designate a different address by notice to the other given in accordance herewith.

| If to Company: | If to Employee: |
|---|---|
| Rick Robinson<br>All-N-One Security<br>3915 Cascade Rd – Suite 340<br>Atlanta, GA, 30331<br><br>*with a copy to*<br><br>Christopher Badeaux<br>1400 Marketplace Blvd.<br>Suite 112<br>Cumming, Georgia 30041 | Edward Childs<br>2780 Glenlocke Cr.<br>Atlanta, GA 30318 |

**23.   Understanding and Voluntariness.** EACH PARTY REPRESENTS AND AGREES THAT THE PARTY HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH THE PARTY'S COUNSEL, THE PARTY HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND THAT THE PARTY IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives, and have executed and delivered this Agreement, as an agreement under seal, effective as of the Effective Date.

**Employee**

*Edward Childs*
SignNow e-signature ID: e776cd62a8...
06/22/2021 16:21:17 UTC
Signature

Dated: 06/22/2021

**Company**

*Christopher Scott Badeaux*
SignNow e-signature ID: a48a1ff215...
06/21/2021 11:30:29 UTC
Signature

By: Christopher Scott Badeaux

Title: General Counsel

Dated: 06/21/2021